UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MSIG HOLDINGS (U.S.A.), INC. and
MITSUI SUMITOMO MARINE
MANAGEMENT (U.S.A.), INC.,

                                        Plaintiffs,                    Case No. 1:25-cv-08071 (JLR)

                    -against-                                          **<u>OPINION AND ORDER</u>**

RICHARD PYE,

                                        Defendant.

JENNIFER L. ROCHON, United States District Judge:

Plaintiffs MSIG Holdings (U.S.A.), Inc. ("MSIGH") and Mitsui Sumitomo Marine

Management (U.S.A.), Inc. ("MSMM" and, together with MSIGH, "Plaintiffs" or "MSIG")

bring suit against Defendant Richard Pye ("Defendant" or "Pye"). Before the Court is Pye's

motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the

following reasons, the motion is GRANTED.

## BACKGROUND

The following facts are drawn from the Amended Complaint, Dkt. 47 ("Am. Compl." or

the "Amended Complaint"), and taken as true for purposes of this motion. *See Koch v.*

*Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

### I.    Factual Background

This action stems from Pye's resignation from MSIG in the summer of 2025. MSIG is a

global property and casualty insurance company that offers, among other things, marine

insurance underwriting. Am. Compl. ¶ 17. In March 2023, Pye, a veteran of the insurance

industry with decades of experience, joined MSIG's marine insurance business group as a

"Senior Vice President." *Id.* ¶¶ 53-54. Like all other new MSIG employees, Pye agreed to the

policies in the employee handbook. *Id.* ¶¶ 46-47. These policies included, among other things, the obligation of employees to protect and safeguard MSIG's confidential information, and the prohibition on using MSIG's communication systems to send "confidential or proprietary information of [MSIG] to any other employee or third party." *Id.* ¶¶ 40-43.

At the time Pye started, MSIG's marine insurance group was captained by Jeff Kaufmann ("Kaufmann"). *Id.* ¶¶ 55-56. In addition to Kaufmann and Pye, the marine insurance business group also included Connie Harwell ("Harwell"), Frank Cecere ("Cecere"), Mary Springer ("Springer"), Stephen Mileski ("Mileski"), Kristian Moor ("Moor"), and John Maudsley ("Maudsley" and, together with Harwell, Cecere, Springer, Mileski, Moor, Kaufmann, and Pye, the "Co-Conspirators"). *Id.* ¶¶ 60-68. The Co-Conspirators were all high-level employees at MSIG who communicated regularly with one another and had access to MSIG's confidential and proprietary information. *Id.* ¶¶ 69-70.

Sometime before July 2025, Kaufmann told Pye about an opportunity to join MSIG's competitor, Arch Insurance ("Arch"). *Id.* ¶ 71. At the time, Arch did not have a marine insurance line of business, but it intended to create a new role to allow Kaufmann to build one. *Id.* ¶¶ 72-73. To establish this new line of business for Arch, Kaufmann and Pye discussed Pye and the Co-Conspirators joining Arch after Kaufmann left MSIG. *Id.* ¶ 74. Kaufmann resigned from MSIG on June 20, 2025, effective July 4, 2025. *Id.* ¶ 76. Shortly thereafter, Arch offered Pye a position, *id.* ¶ 77, which Pye intended to accept after Kaufmann's resignation became effective, *id.* ¶ 83.

MSIG tried to retain Pye by offering him a salary increase, effective June 23, 2025, and a retention bonus. *Id.* ¶ 81. Notwithstanding his intentions to follow Kaufmann to Arch, Pye accepted the salary increase. *Id.* ¶¶ 81, 83-84.

2

In addition to accepting a pay increase, at MSIG's invitation, Pye attended MSIG's USA Strategic Planning Meeting — a two-day, invite-only event on July 23 and 24, 2025 — to discuss the company's future business strategies. *Id.* ¶¶ 85-86. Before the event took place, MSIG emailed Pye confidential and proprietary information and trade secrets, such as "financial and business projections, industry projections, strategies for the coming year, and other current and prospective customer policy or pricing information" (the "USA Strategy Meeting Materials"). *Id.* ¶¶ 87, 90, 94-95. This information was sent to Pye's company email, but Pye later forwarded these materials to his personal email account on July 22, 2025. *Id.* ¶¶ 94-95.

One week after attending the USA Strategic Planning Meeting, on August 1, 2025, Pye resigned, along with Harwell, Cecere, Springer, Moor, and Maudsley, effective August 15, 2025. *Id.* ¶ 98. Mileski then resigned on August 4, 2025, effective August 15, 2025. *Id.* After they left MSIG, the Co-Conspirators all joined Arch. *Id.* ¶ 100.

On August 4, 2025, MSIG's Chief Underwriting Officer held a transition meeting with Pye, Harwell, and Cecere. *Id.* ¶¶ 101-02. At that meeting, MSIG informed Pye, Harwell, and Cecere that their access to confidential information would be restricted and that their company-issued laptops would be monitored. *Id.* ¶ 102. The Chief Underwriting Officer also assigned several transition tasks that needed to be completed by the last day of their employment, including "(a) that they verify and update MSIG's list of customer policy renewals, as is typically requested in the ordinary course of business, including by using the company's tracker templates, (b) that they advise, based on MSIG's information and business projections and strategies, their expectations for renewal retention, rate movement, and new business production, and (c) that they finish certain catastrophe risk modelling tasks." *Id.* ¶¶ 104, 106. Pye used confidential information and trade secrets to complete these transition tasks. *Id.* ¶ 108. Pye signed an acknowledgment of his obligation to abide by his confidentiality agreement and to

3

make immediate arrangements to return any confidential information in his possession. *Id.* ¶¶ 111-15. According to the Amended Complaint, Pye, Harwell, and Cecere "largely" (and therefore, not completely) finished the transition tasks by August 8, 2025. *Id.* ¶ 109.

While performing these tasks, Pye visited MSIG's Chicago office five times on August 6, August 7, August 8, August 11, and August 13, 2025. *Id.* ¶ 123. During four of these visits, Pye "printed confidential and proprietary trade secret information, including, but not limited to, lists of MSIG customer accounts, policy renewal lists, broker information, MSIG non-public and proprietary guidelines, and MSIG's future financial and business projections, including projections related to MSIG's gross written premium" ("Pre-Departure Materials"). *Id.* ¶¶ 126-27. Printing materials was not Pye's normal practice, *id.* ¶ 124, and it was not required for him to complete the assigned transition tasks, *id.* ¶¶ 130-31.

In addition to Pye, Kaufmann also repeatedly emailed confidential information and trade secrets to his personal email, including sending such information in May and June 2025 before he had resigned. *Id.* ¶¶ 139-43. Springer printed similar information on August 11, 2025. *Id.* ¶¶ 144-48.

## II.    Procedural Background

On September 29, 2025, MSIG commenced this action against only Pye, alleging several claims under state and federal law. Dkt. 1 ("Compl."). MSIG moved for expedited discovery, Dkt. 10, which the Court denied, Dkt. 27. On November 6, 2025, Pye moved to dismiss the Complaint and requested that the Court stay discovery. Dkts. 32-34. The Court denied the request to stay discovery on November 18, 2025. Dkt. 43. Shortly thereafter, on November 26, 2025, MSIG filed the Amended Complaint. *See generally* Am. Compl. In the Amended Complaint, MSIG asserted six causes of action: (1) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, *id.* ¶¶ 153-73; (2) misappropriation of trade secrets under

4

New York common law ("New York trade secrets claim"), *id.* ¶¶ 174-79; (3) breach of the duty of loyalty/faithless servant doctrine, *id.* ¶¶ 180-89; (4) breach of fiduciary duty, *id.* ¶¶ 190-202; (5) unjust enrichment, *id.* ¶¶ 203-10; and (6) aiding and abetting a breach of fiduciary duty, *id.* ¶¶ 211-23.

On December 1, 2025, Pye moved to dismiss the Amended Complaint in its entirety. Dkt. 49 ("Mot."); Dkt. 50 ("Fourmaux Decl."); Dkt. 51 ("Br."). MSIG filed a brief in opposition on December 15, 2025, Dkt. 54 ("Opp."), and Pye replied on December 22, 2025, Dkt. 55 ("Reply"). The motion is fully briefed.

## LEGAL STANDARD

Under Rule 12(b)(6), a "complaint may be dismissed to the extent that it 'fail[s] to state a claim upon which relief can be granted.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110 (2d Cir. 2010) (alteration in original) (quoting Fed. R. Civ. P. 12(b)(6)). On a motion seeking such dismissal, the Court "accept[s] the material facts alleged in the complaint as true and draw[s] all reasonable inferences in favor of the plaintiff." *Sherman v. Abengoa, S.A.*, 156 F.4th 152, 162 (2d Cir. 2025) (quoting *In re Nine W. LBO Sec. Litig.*, 87 F.4th 130, 140 (2d Cir. 2023)). However, the Court need not "accept 'conclusory allegations or legal conclusions masquerading as factual conclusions.'" *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith v. Loc. 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

While *Iqbal* and *Twombly* "do[] not prevent a plaintiff from 'pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of

culpability plausible,'" *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations omitted), "such allegations must be 'accompanied by a statement of the facts upon which the belief is founded,'" *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 527 (S.D.N.Y. 2013) (quoting *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006)).  If "[p]laintiffs have offered nothing but conjecture and speculation to support their belief about defendants' culpability," their claim must be dismissed.  *Id.*

## DISCUSSION

Pye raises five arguments in support of dismissing the Amended Complaint.  First, he argues that the DTSA claim fails because the Amended Complaint does not plausibly allege that MSIG possessed a trade secret or that Pye misappropriated such information.  Br. at 10-22.  Second, for the same reasons the DTSA claim fails, Pye asserts that the New York trade secrets claim should also be dismissed.  *Id.* at 22.  Third, he posits that MISG's claims for breach of the duty of loyalty/faithless service doctrine and breach of fiduciary duty fail because there are no plausible allegations that Pye exploited or used MSIG's confidential information to compete unfairly.  *Id.* at 23-24.  Fourth, he argues that the existence of an underlying written contract bars MSIG's unjust enrichment claim.  *Id.* at 27-28.  Lastly, Pye argues that the Amended Complaint lacks sufficient facts to allege the elements of aiding and abetting a breach of fiduciary duty.  *Id.* at 24-27.  The Court addresses each argument in turn.

### I.    Count 1: Violation of the DTSA

Pye moves to dismiss the first cause of action, which asserts a claim under the DTSA.  *Id.* at 10-22.  The DTSA provides a federal cause of action for "[a]n owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b)(1).  To survive a motion to dismiss, a plaintiff must allege that "(i) it possessed a trade secret, and (ii) the defendant misappropriated

6

the trade secret." *Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*, 602 F. Supp. 3d 663, 671 (S.D.N.Y. 2022) (alterations adopted and citation omitted).

Here, MSIG alleges that the information contained in the USA Strategy Meeting Materials and Pre-Departure Materials was a trade secret, and that Pye misappropriated this information by sending the materials to his personal email and printing them.  Am. Compl. ¶¶ 153-73.  Pye argues that MSIG does not sufficiently plead that the materials were trade secrets, *see* Br. at 11-17, and even if they were, the Amended Complaint does not allege Pye misappropriated that information, *id.* at 17-22.  The Court need only address misappropriation because, even assuming that the USA Strategy Meeting Materials and Pre-Departure Materials are trade secrets, the Amended Complaint does not plausibly allege that Pye misappropriated the information.

The DTSA defines "misappropriation" as "(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (B) disclosure or use of a trade secret of another without express or implied consent" in specified circumstances.  18 U.S.C. § 1839(5); *see also AUA Priv. Equity Partners, LLC v. Soto*, No. 17-cv-08035 (GHW), 2018 WL 1684339, at *4 (S.D.N.Y. Apr. 5, 2018).  In other words, a plaintiff must plead one of "three theories of misappropriation:" (1) "acquisition" by improper means, (2) unauthorized "disclosure," or (3) unauthorized "use." *Onyx Renewable Partners L.P. v. Kao*, No. 22-cv-03720 (RA), 2023 WL 405019, at *4 (S.D.N.Y. Jan. 25, 2023) (quoting *AUA Priv. Equity Partners, LLC*, 2018 WL 1684339, at *4); *accord Hedgeye Risk Mgmt., LLC v. Dale*, No. 21-cv-03687 (ALC) (RWL), 2023 WL 6386845, at *7 (S.D.N.Y. Sept. 29, 2023).  MSIG has not stated a claim under any of these theories.

### A.    Acquisition by Improper Means

"[I]mproper means" under the DTSA "includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6).  MSIG asserts that Pye breached his duty to maintain secrecy, as established by MSIG's confidentiality policies, when he sent the USA Strategy Materials to his personal email and printed the Pre-Departure Materials.  Opp. at 15.  However, "[i]t cannot be that every employee who simply accesses documents containing alleged proprietary information on a personal device, perhaps in violation of a company directive, has now violated federal law." *eShares, Inc. v. Talton*, 727 F. Supp. 3d 482, 493 (S.D.N.Y. 2024).  The terms in the DTSA's definition of improper means "make clear that the conduct requires a level of impropriety that merely accessing or downloading documents onto a personal device does not implicate." *Id.* Thus, for "transferring confidential information and trade secrets to a personal account [to] constitute acquisition by improper means," courts require plaintiffs to allege "(1) the employee was directed not to share the information outside of employer-issued devices — whether, for example, through a policy or employment-related contract; and (2) the employee transferred the information outside of an employer-issued device for an improper or illegitimate purpose." *Id.* at 494 (collecting cases).  Applying these principles, the Amended Complaint does not state a claim for acquisition by improper means.

First, the Amended Complaint does not plausibly allege that MSIG directed Pye not to forward the information to his personal email.  According to the Amended Complaint, Pye was prohibited from "[s]ending any confidential or proprietary information of [MSIG] to any other employee or third party."  Am. Compl. ¶ 42.  While this policy prohibited Pye from disclosing MSIG's confidential information to others, it did not proscribe Pye from sending such information to himself or printing such materials.  *Cf. eShares, Inc.*, 727 F. Supp. 3d at 494

(finding that the company's data policy "forb[a]de employees from sending or transferring restricted data outside of [the company]").  Thus, he did not breach company policy by merely sending the USA Strategy Materials to his personal email and printing the Pre-Departure Materials while at MSIG's office.

Second, even if Pye's actions breached MSIG's policies, the Amended Complaint does not plausibly allege that he did so for improper purposes.  Courts will infer an improper purpose when an employee sent the information to himself under "unusual circumstances," such as allegations that the employee accessed information unrelated to their job or sent confidential materials right before being terminated, with no legitimate purpose.  *See Lodging Sols., LLC v. Miller*, No. 19-cv-10806 (AJN), 2020 WL 6875255, at *3 (S.D.N.Y. Nov. 23, 2020) ("[W]hile the mere allegation that [defendant] accessed trade secret information may not be enough to support an allegation of acquisition, the unusual circumstances under which [defendant] is alleged to have accessed the information are."); *see also, e.g.*, *id.* (holding that acquisition by improper means was plausibly alleged when defendant "deleted . . . files after viewing them" and "some of the information [defendant] is alleged to have accessed had no connection to his employment duties, but could be of use to [p]laintiff's competitors"); *eShares, Inc.*, 727 F. Supp. 3d at 495 (inferring improper means when defendant "downloaded documents a few minutes after receiving an invitation for a meeting" that would ultimately lead to plaintiff being placed on administrative leave); *Onyx Renewable Partners L.P.*, 2023 WL 405019, at *4 (finding acquisition by improper means plausibly alleged when defendant downloaded "10,507 files containing . . . trade secrets from a secure dataroom" to his personal storage device without a "legitimate purpose").  No such circumstances are alleged here.  As pleaded in the Amended Complaint, Pye had a legitimate reason to access the USA Strategy Materials since MSIG invited Pye to the USA Strategic Planning Meeting and sent him the meeting materials beforehand.  Am.

Compl. ¶¶ 87, 94.  He did not forward these materials to his personal email at an unusual or suspicious time — he did it on July 22, 2025, a day before the USA Strategic Planning Meeting took place.  *Id.* ¶ 94.  Likewise, as the Amended Complaint acknowledges, Pye used the Pre-Departure Materials to complete transition tasks MSIG assigned to him.  *Id.* ¶ 108.  Although printing materials was not Pye's normal practice, *id.* ¶ 124, he did so while at MSIG's Chicago office, *id.* ¶ 126.  Furthermore, even though Pye sent himself the information while he intended to join a competing marine insurance business and has not returned any materials, *see* Opp. at 13, these allegations are not enough to infer that Pye emailed himself and printed the alleged trade secrets for improper purposes.  Indeed, courts regularly reject the notion that an employee acquired trade secrets by improper means where, as here, the employee was authorized to access the alleged trade secrets in their role for the company.  *See, e.g.*, *Zurich Am. Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396, 405 (S.D.N.Y. 2021) (holding that defendant did not acquire trade secrets by improper means when "[defendant] was authorized to acquire this information as part of his job"); *GMH Cap. Partners v. Fitts*, No. 24-cv-00290 (ER), 2025 WL 950674, at *9 (S.D.N.Y. Mar. 28, 2025) ("[Plaintiff] does not allege that [defendant] acquired the trade secrets improperly because that information was voluntarily disclosed to [defendant] while she was a part of the team advising [plaintiff].").

MSIG cites to *ExpertConnect, L.L.C. v. Fowler*, No. 18-cv-04828 (LGS), 2019 WL 3004161 (S.D.N.Y. July 10, 2019), *see* Opp. at 15, but that case is inapposite.  There, the court found the complaint pleaded acquisition by improper means because defendants "downloaded a document regarding an acquisition proposal when her role was limited to client services" and had attempted to "conceal the fact that she took files."  *ExpertConnect, L.L.C.*, 2019 WL 3004161, at *6 (internal quotation marks omitted).  Here, by contrast, Pye accessed the USA Strategy Materials and Pre-Departure Materials that were relevant to his position and work assignments at

MSIG, and there are no allegations that Pye tried to conceal his actions. As such, the Amended Complaint fails to allege misappropriation under a theory of acquisition by improper means.

### B.    Unauthorized Disclosure and Unauthorized Use

The Amended Complaint also fails to plausibly allege that Pye disclosed or used MSIG's trade secrets without authorization. In support of use and disclosure, MSIG relies on conclusory allegations that "[u]pon information and belief, Pye used MSIG's confidential and proprietary trade secrets for his personal benefit and to obtain a competitive advantage against MSIG and to solicit MSIG's customers, at MSIG's expense." Am. Compl. ¶ 165. Missing, however, are any well-pleaded facts to support that assertion, such as MSIG having lost marine insurance clients to Arch following Pye's departure or that Arch is providing services that resemble MSIG's own offerings and could not plausibly be replicated without unauthorized use of such trade secrets. Cf. DASH Regul. Techs., LLC v. Axiom Software Lab'ys Inc., No. 21-cv-08751 (JGK), 2023 WL 2586104, at *5 (S.D.N.Y. Mar. 21, 2023) (finding misappropriation adequately pleaded where defendant's proposal to solicit plaintiff's clients "was tailored to [plaintiff]'s own specific understanding of that client's particular needs, which would not have been possible unless [defendant] knew of [plaintiff]'s trade secret information for that client"); Medidata Sols., Inc. v. Veeva Sys., Inc., No. 17-cv-00589 (LGS), 2018 WL 6173349, at *4 (S.D.N.Y. Nov. 26, 2018) (holding that the complaint plausibly alleged disclosure of trade secrets where defendant "marketed and offered products with specific features and functionality that had been the focus of [plaintiff's] confidential research," and "introduce[d] competing products in record time despite [its] lack of experience in developing [the product]"). Courts regularly dismiss pleadings that rely on conclusory statements that a defendant used or disclosed trade secrets while lacking additional circumstantial allegations to support such conclusions. See, e.g., GMH Cap. Partners, 2025 WL 950674, at *10 (finding allegations that defendant shared trade secrets made upon

11

information and belief insufficient when it was "unsupported by facts"); *Intrepid Fin. Partners, LLC v. Fernandez*, No. 20-cv-09779 (LTS), 2020 WL 7774478, at *4 (S.D.N.Y. Dec. 30, 2020) (dismissing DTSA claim when the pleading was "entirely devoid of any specific factual allegations supporting" plaintiff's allegation that defendant was "directly or indirectly disclosing and using [plaintiff's trade secrets] to solicit [plaintiff]'s customers"). As such, the Amended Complaint does not plausibly allege that Pye used or disclosed the alleged trade secrets.

*          *          *

Given that the Amended Complaint does not state any of the necessary theories of misappropriation, MSIG's first cause of action under the DTSA is dismissed.

## II.    Count II: New York Trade Secrets Claim

Pye also moves to dismiss MSIG's New York trade secrets claim. Br. at 22. Under New York common law, "[a] plaintiff claiming misappropriation of a trade secret must prove: (1) it possessed a trade secret, and (2) defendant is using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means." *E.J. Brooks Co. v. Cambridge Sec. Seals*, 105 N.E.3d 301, 310 (N.Y. 2018); *accord Inspired Cap., LLC v. Conde Nast*, 803 F. App'x 436, 440 (2d Cir. 2020) (summary order) (quoting *Integrated Cash Mgmt. Servs., Inc. v. Dig. Transactions, Inc.*, 920 F.2d 171, 173 (2d Cir. 1990)). "Unlike the DTSA," a New York trade secrets claim "require[s] that [p]laintiff allege that [defendant] actually used or disseminated the information, not just improperly acquired it." *Lodging Sols., LLC*, 2020 WL 6875255, at *3. Because the Amended Complaint does not plausibly allege Pye used or disclosed MSIG's trade secrets, *see* Section I.B, the trade secrets claim under New York common law must be dismissed.

12

### III.    Counts III and IV: Duty of Loyalty/Faithless Servant Doctrine and Breach of Fiduciary Duty

Pye next argues that the Court should dismiss MSIG's third and fourth causes of action, which assert claims for breach of the duty of loyalty/faithless service doctrine, Am. Compl. ¶¶ 180-89, and breach of fiduciary duty, *id.* ¶¶ 190-202, respectively.  "To state a breach of fiduciary duty claim under New York law, a plaintiff must plead: '(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom.'"  *Spinelli v. Nat'l Football League*, 903 F.3d 185, 207 (2d Cir. 2018) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011)).  Under New York law, "employees owe a duty of loyalty and good faith to their employer in the performance of their duties."  *Cerciello v. Admiral Ins. Brokerage Corp.*, 936 N.Y.S.2d 224, 226 (N.Y. App. Div. 2011).

"New York courts are far from clear regarding the contours of — and interplay between — a claim for breach of fiduciary duty and the faithless servant doctrine."  *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 242 (2d Cir. 2020).  "[S]ome federal courts treat breach of fiduciary duty claims and claims based on the faithless servant doctrine as doctrinally distinct," whereas "many courts do not so distinguish the two claims, and some even note that they are essentially the same."  *Id.* (collecting cases); *accord Regency NYC, Inc. v. Atkinson*, No. 23-cv-05479 (JGLC), 2024 WL 4337486, at *5 (S.D.N.Y. Sept. 27, 2024).  Where, as here, both parties treat the claims as the same, and both are predicated on a breach of the duty of loyalty, courts "will analyze th[e] cause[s] of action as a single claim for breach of the duty of loyalty, brought under the faithless servant doctrine."  *Regency NYC, Inc.*, 2024 WL 4337486, at *5; *accord Ebel*

13

*v. G/O Media, Inc.*, No. 20-cv-07483 (PAE), 2021 WL 2037867, at *4 (S.D.N.Y. May 21, 2021).[1]

The "faithless servant doctrine holds that 'one who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary.'" *Yukos Cap. S.A.R.L.*, 977 F.3d at 229 (alteration adopted) (quoting *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003)); *Miller v. Levi & Korsinsky, LLP*, No. 20-cv-01390 (LAP), 2021 WL 535599, at *6 (S.D.N.Y. Feb. 12, 2021) ("An employee who works to undermine or covertly compete with her employer cannot be permitted to retain the benefits of an agency relationship she has betrayed.").  New York courts have "two standards for determining whether an employee's conduct is encompassed by the faithless servant doctrine: (1) 'misconduct and unfaithfulness substantially violate the contract of service' which requires a 'persistent pattern', and (2) 'misconduct by an employee that rises to the level of a breach of a duty of loyalty or good faith.'" *JAPNA, Inc. v. SELFX Innovations Inc.*, No. 22-cv-10753 (ALC) (RWL), 2024 WL 1250269, at *9 (S.D.N.Y. Mar. 22, 2024) (quoting *Miller*, 2021 WL 535599, at *5).  "The key distinction between the two [standards] concerns whether the breach of fiduciary duty must be 'substantial.'" *Robinson v. De Niro*, 739 F. Supp. 3d 33, 121-22 (S.D.N.Y. 2023) (quoting *Yukos Cap. S.A.R.L.*, 977 F.3d at 237); *accord Gravitas Search Partners LLC v. Deutsch*, No. 24-cv-02683 (MMG), 2025 WL 2243720, at *14 (S.D.N.Y. Aug. 6, 2025).  "New York courts have not . . . defined the circumstances, if any, in which one standard should apply rather than the other." *Yukos Capital S.A.R.L.*, 977 F.3d at 237 (quoting *Phansalkar*, 344 F.3d at 202).

---

[1] In its opposition, MSIG notes that these could be analyzed as separate claims, Opp. at 17-19, but goes on to analyze the two causes of action together and does not provide any reason why the breach of fiduciary duty claim is distinct from the breach of duty of loyalty/faithless service doctrine claim, *see id.* at 19-22; *see also* Reply at 9.

14

The Court need not determine the applicable standard because MSIG does not plausibly allege that Pye's conduct rose to the level of breach of duty of loyalty and good faith, much less that such violations were substantial. *Cf. Phansalkar*, 344 F.3d at 202. "[T]he duty of loyalty [claim] has been limited to cases where the employee, acting as the agent of the employer, unfairly competes with his employer, diverts business opportunities to himself or others to the financial detriment of the employer, or accepts improper kickbacks." *Ebel*, 2021 WL 2037867, at *5 (quoting *Farricker v. Penson Dev., Inc.*, No. 07-cv-11191 (DAB), 2010 WL 845983, at *2 (S.D.N.Y. Mar. 4, 2010)). "A claim 'for breach of the duty of loyalty . . . is available only where the employee has acted directly against the employer's interests — as in embezzlement, improperly competing with the current employer, or usurping business opportunities.'" *Id.* (quoting *Veritas Cap. Mgmt., LLC v. Campbell*, 918 N.Y.S.2d 448, 449 (N.Y. App. Div. 2011)). Generally, there must be allegations of "the employee's misuse of the employer's resources to compete with the employer." *Espire Ads LLC v. TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 266 (S.D.N.Y. 2023) (quoting *Cerciello*, 936 N.Y.S.2d at 226)); *see also Jeremias v. Toms Cap. LLC*, 167 N.Y.S.3d 459, 462 (N.Y. App. Div. 2022) ("Taking preparatory steps, while still in the employer's employ, to enter into a competing business is not a breach of an employee's duty of loyalty as long as the employee does not use the employer's time or resources to do so.").

Here, MSIG relies on the same allegations as its DTSA claim — that Pye decided to join Arch's competing marine insurance business and misappropriated MSIG's trade secrets to use at Arch. *Compare* Am. Compl. ¶¶ 180-89 (breach of duty of loyalty/faithless servant doctrine claim), *and id.* ¶¶ 190-202 (breach of fiduciary duty claim), *with id.* ¶¶ 153-73 (DTSA claim). Pye did not have a non-compete agreement with MSIG and, as discussed earlier, the Amended Complaint does not plead that Pye improperly used or disclosed MSIG's trade secrets. *See supra* Section I.B. Just as such conclusory allegations could not sustain a DTSA claim, so too do they

15

fail to state a claim for breach of the duty of loyalty. *See, e.g.*, *Garvey v. Face of Beauty LLC*, 634 F. Supp. 3d 84, 93 (S.D.N.Y. 2022) (dismissing breach of fiduciary duty counterclaim that "[m]erely assert[ed] that [the counterclaim-defendant] solicited customers . . . , with no underlying facts as to when, who, or how"); *Ebel*, 2021 WL 2037867, at *6 (dismissing faithless servant counterclaim when the employer alleged, at most, that the employee "sought to trigger the good-reason provision of her employment contract, and improperly received and maintained confidential and privileged documents"); *Lodging Sols., LLC*, 2020 WL 6875255, at *3 (dismissing duty of loyalty claim when the complaint "lack[ed] any well-pleaded allegation that [defendant] used or disseminated this information"); *Leary v. Al-Mubaraki*, No. 18-cv-00048 (LTS) (HBP), 2019 WL 4805849, at *3 (S.D.N.Y. Sept. 30, 2019) (noting that "the act of sending internal information to a personal email address, standing alone" does not "constitute[] a breach of fiduciary duty"). Since the Amended Complaint fails to allege a breach of the duty of loyalty, it also fails to state a claim under the related faithless servant doctrine.

As such, MSIG's third and fourth causes of action for breach of duty of loyalty/faithless servant doctrine and breach of fiduciary duty are dismissed.

## IV.    Count V: Unjust Enrichment

Pye next argues that MSIG's fifth cause of action for unjust enrichment should be dismissed. To state a claim for unjust enrichment under New York law, the plaintiff must allege that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004); *accord Regel v. Campbell Soup Co.*, No. 24-cv-06541 (KMK), 2025 WL 2733840, at *4 (S.D.N.Y. Sept. 25, 2025). "[U]njust enrichment is not a catchall cause of action to be used when others fail." *McCracken v. Verisma Sys., Inc.*, 91 F.4th 600, 608 (2d Cir. 2024) (alteration in original) (quoting *Corsello*

16

*v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012); *accord La Rosa v. SPD Swiss Precision Diagnostics GmbH*, No. 24-1575-cv, 2025 WL 841687, at *4 (2d Cir. Mar. 18, 2025) (summary order). "It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *McCracken*, 91 F.4th at 608.

Here, Pye argues, and the Court agrees, that the unjust enrichment claim should be dismissed as duplicative of MSIG's claims under the DTSA, New York common law, faithless servant doctrine, and fiduciary duty. *See* Br. at 27-28; Reply at 12. MSIG's unjust enrichment claim alleges that Pye "benefitted from the misappropriation and unauthorized use of MSIG's confidential and proprietary trade secret information . . . to solicit MSIG's current and prospective customers," Am. Compl. ¶ 204, and that he "remains in possession of MSIG's confidential and proprietary trade secret information notwithstanding MSIG's demand for the return of the information," *id.* ¶ 206. The Amended Complaint also alleges that Pye unjustly "benefitted from a salary increase at MSIG without disclosing that he was participating in and executing a scheme to work for a competitor and take MSIG's confidential information with him." *Id.* ¶ 207. The misconduct on which MSIG relies for this claim is the same as that underlying its DTSA, New York trade secrets, breach of duty of loyalty/faithless servant doctrine, and breach of fiduciary duty claims. Although the Court has dismissed those claims, MSIG offers no theory as to why this is an "unusual situation[]" where "circumstances create an equitable obligation running from the defendant to the plaintiff" such that an unjust enrichment claim can survive while the others fail. *Corsello*, 967 N.E.2d at 1185 (dismissing unjust enrichment claim that relies on the same conduct because "[t]o the extent that [the other] claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects"); *La Rosa*, 2025 WL 841687, at *4

17

(affirming dismissal of unjust enrichment claim when it was "premised on the alleged deceptive practices in the advertising of the [d]efendants' products" that did not sustain a claim for deceptive practices); *TileBar v. Glazzio Tiles*, 723 F. Supp. 3d 164, 207-08 & n.27 (E.D.N.Y. 2024) (dismissing unjust enrichment claim when it was duplicative of dismissed "the trade secret, breach of contract, and breach of duty of loyalty claims" even though those claims had also been dismissed).

Accordingly, MSIG's fifth cause of action for unjust enrichment is dismissed.

## V.    Count VI: Aiding and Abetting Breach of Fiduciary Duty

Lastly, Pye moves to dismiss Count VI, which alleges a claim against Pye for aiding and abetting a breach of fiduciary duty. "To state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must show: '(1) breach of fiduciary obligations to another of which the aider and abettor had actual knowledge; (2) the defendant knowingly induced or participated in the breach; and (3) plaintiff suffered actual damages as a result of the breach.'" *In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 182 (S.D.N.Y. 2014) (quoting *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 466 (S.D.N.Y. 2009)), *aff'd*, 611 F. App'x 34 (2d Cir. 2015) (summary order). Relevant here, "a claim for aiding and abetting breach of fiduciary duty is dependent upon the underlying breach of fiduciary duty." *Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 613 (S.D.N.Y. 2011); *see also Kafka v. Wells Fargo Sec., LLC*, No. 23-1281-cv, 2024 WL 4533332, at *3 (2d Cir. Oct. 21, 2024) (summary order) (affirming dismissal of claim for aiding and abetting breach of fiduciary duty when the complaint failed to allege an underlying breach of fiduciary duty). Pye argues that the aiding and abetting claim fails on the first element because the allegations against the other Co-Conspirators for breach of fiduciary duty suffer from the same deficiencies as the fiduciary duty and faithless servant doctrine claims against Pye. Br. at 25. The Court agrees.

18

According to the Amended Complaint, the Co-Conspirators breached their fiduciary duty to MSIG by scheming to misappropriate confidential information to unfairly compete with MSIG while working for Arch.  Am. Compl. ¶ 215.  However, the allegations against the Co-Conspirators are even more sparse than those against Pye.  Beyond general allegations of a scheme to misappropriate MSIG's trade secrets, *id.*, the Amended Complaint only specifies conduct by two Co-Conspirators — Kaufmann and Springer, *see id.* ¶¶ 136-52.  Thus, the Amended Complaint does not adequately allege that the other Co-Conspirators — Cecere, Harwell, Maudsley, Mileski, and Moor — breached their fiduciary duty.  *See, e.g.*, *Silverman v. 3D Total Sols., Inc.*, No. 18-cv-10231 (AT), 2020 WL 1285049, at *9-10 (S.D.N.Y. Mar. 18, 2020) (dismissing breach of fiduciary duty and aiding and abetting breach of fiduciary duty when "the complaint does not allege facts that establish [defendant]'s misconduct").

The allegations against Kaufmann and Springer are also insufficient to state a claim for breach of fiduciary duty.  As with Pye, the Amended Complaint alleges that Kaufmann and Springer emailed MSIG documents to their personal accounts and printed confidential information before resigning.  Kaufmann allegedly sent trade secrets to his personal email on May 7, 2025, and June 3, 2025, *id.* ¶¶ 140-43, and Springer allegedly printed trade secrets at MSIG's office on August 11, 2025, *id.* ¶¶ 144-48.  As discussed above, a breach of fiduciary duty claim requires allegations of use or dissemination of the confidential information.  *See supra* Part III; *see also Leary*, 2019 WL 4805849, at *3 (dismissing counterclaim for breach of fiduciary duty when counterclaim-defendant was alleged to have sent confidential information to his personal email account but the pleadings were "devoid of any allegation that [the counterclaim-defendant] used [the counterclaimant]'s confidential information to compete against it, to divert . . . business opportunities, or to engage in financially advantageous self-dealing"); *cf. DeWitt Stern Grp., Inc. v. Eisenberg*, 734 F. App'x 48, 51 (2d Cir. 2018) (summary

19

order) (affirming summary judgment dismissing breach of fiduciary duty when plaintiff "has not provided any evidence" that defendant's actions while "before his resignation went beyond preparation to compete later or caused [plaintiff] to suffer damages"). Since the Amended Complaint contains only conclusory allegations that Kaufmann and Springer have used the aforementioned information to compete with MSIG, it does not plausibly allege an underlying breach of fiduciary duty by Kaufmann or Springer.

As such, MSIG's sixth cause of action for aiding and abetting a breach of fiduciary duty is dismissed.

## VI.    Leave to Amend

At the end of its opposition brief, MSIG asks the Court for leave to amend to the extent that the Court dismisses any of the claims, Opp. at 27-28 — a request that Pye opposes, Reply at 13. A court "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, here, MSIG has already amended once in response to Pye's first motion to dismiss. Thus, it had the benefit of seeing the arguments for dismissal and curing any defects, but it failed to do so. In its request for leave to amend, MSIG also does not identify any additional facts it would plead to cure the deficiencies. Thus, its cursory request to amend is denied. *See, e.g.*, *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (affirming denial of leave to amend because "a court need not always allow a party to replead simply because it asked" and "denial of leave to amend is proper where the request gives no clue as to how the complaint's defects would be cured" (internal quotation marks and citation omitted)); *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 275-76 (2d Cir. 2006) (per curiam) (holding that the district court did not abuse its discretion in denying leave to amend where the request was made only in a footnote with no explanation as to how the complaint's defects would be cured).

**CONCLUSION**

For the aforementioned reasons, the motion to dismiss is GRANTED.  The Clerk of the

Court is respectfully directed to terminate the motion at Dkt. 49 and close this case.

Dated:  June 25, 2026
         New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge